UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**WILLIAM HALL,**<br><br>Defendant. | Case No. 25-mj-248 |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm), as the Defendant, William Hall, is charged with violating 18 U.S.C. § 922(g)(1) (felony involving possession of a firearm) and 18 U.S.C. § 3142(f)(2)(A) (serious flight risk). The Defendant stands before this Court charged with illegally possessing two firearms. The firearms were only discovered after the Defendant fled police in a vehicle, reaching speeds of approximately 100 miles per hour before ultimately crashing the vehicle. The Defendant possessed the firearms despite having been convicted of Carrying a Pistol Without a License.[1] The United States requests that the Court consider the following points and authorities, as well as other information presented at the detention hearing, and order the Defendant to be detained pending trial.

## PROCEDURAL HISTORY

On October 17, 2025, the United States filed a complaint charging the Defendant with

---

[1] District of Columbia, Superior Court, 2016-CF2-1409, Carrying a Pistol Without a License (Sentenced to one year of confinement, one year suspended, and on year of supervised probation).

Unlawful Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1) and Fleeing from a Law Enforcement Officer in a Motor Vehicle in violation of D.C. Code § 50–2201.05b. On October 17, 2025, an initial appearance was held before the Honorable Magistrate Judge Moxila A. Upadhyaya. After the United States made a motion for pretrial detention, the Court set the detention hearing for October 20, 2025.

## FACTUAL BACKGROUND

On October 15, 2025, at approximately 9:52 PM, members of the Executive Order 14252 Task Force were working in the District of Columbia. Task Force members were in plain clothes with external vests bearing "POLICE" and "US MARSHAL" law enforcement identifiers. Members were operating unmarked police cruisers equipped with emergency lights and sirens. A police vehicle was occupied by United States Park Police (USPP) Officers Callahan and Brennan.

Officers were traveling eastbound along the 11th Street Bridge when they approached a solid red signal at the ramp to I-295. Officers observed a silver Chevrolet SUV approach at a rapid rate of speed and quickly come up behind them, before it suddenly veered across the solid double yellow lane dividers and into a marked safety area toward oncoming traffic. As the traffic signal turned green, the driver (later identified as the Defendant) made a right turn across three lanes of traffic, nearly striking other motorists before accelerating down the ramp.

Officer Brennan activated the police vehicle's overhead emergency equipment and attempted to conduct a traffic stop. The Chevrolet SUV slowed down and came to a stop on the ramp. Officers Brennan and Callahan exited their vehicles and approached the Chevrolet SUV. The vehicle then rapidly accelerated and took flight away from officers.

Officers initiated a vehicle pursuit that reached speeds of 100 miles per hour in a posted 55 mile per hour zone. The Defendant weaved in and out of traffic and drove in the shoulder. The

pursuit concluded when the Defendant lost control of the vehicle on the ramp from I-295 to South Capitol Street, resulting in a single vehicle motor vehicle collision which pinned the passenger side of the Defendant's vehicle shut. The Defendant, the driver and lone occupant of the vehicle, was extracted through the driver's side window.




*Figures 1 and 2 – depicting damage to Chevrolet SUV*

The Chevrolet SUV was impounded, and an inventory search was conducted on scene. During the inventory search, Investigator Keness observed two handguns in the center console of the vehicle. The first firearm was a Taurus G2S 9mm handgun loaded with one round in the chamber and seven rounds of 9mm ammunition in the magazine. The second firearm was a Taurus G3C 9mm handgun loaded with one round in the chamber and nine rounds of 9mm ammunition in the chamber. Officers also recovered one loose round of 9mm ammunition from the center console.

 

*Figures 3 and 4 – firearms recovered from the center console of the Chevrolet SUV*

While securing the Defendant's property in the vehicle, the Defendant asked officers to place his property "in the same spot where [officers] found the two pistols" before clarifying with "where I hid the other stuff" and then stating, "where she hid the other stuff." The Defendant then stated, "it's hers," and gave officers the name C.F. It was later determined that the Taurus G3C 9mm handgun was registered to C.F. Officers also recovered a single white rock from the Defendant's sock. The white rock weighed 1.3 grams and field tested positive for cocaine.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142 (e). The Act provides however, for certain crimes, that there is a rebuttable presumption

that no conditions or combination of conditions will assure the safety of the community. *Id.*

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the United States may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) and 18 U.S.C. § 3142(f)(2)(A) (serious flight risk). A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would ensure the Defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(e)(1). Accordingly, the Court should detain the Defendant pending trial.

I. **The Nature and Circumstances of the Offense Support Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying a significant penalty. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, the evidence is convincing that the Defendant possessed the two firearms stored in the center console of the vehicle. The status of the weapons when they were found is further cause for concern. The firearms were not holstered or secured in any way that would prevent a trigger being pulled and were stored loosely in the center console of the vehicle. Moreover, both firearms were loaded and had rounds in the chamber. In other words, they were primed and ready to use.

This offense initiated with the Defendant driving recklessly, then fleeing officers in a vehicle, causing officers to engage in a dangerous speed chase. The vehicle pursuit reached speeds of 100 miles per hour in a posted 55 mile per hour zone. All the while, the Defendant weaved in and out of traffic and drove on the shoulder of the roadway. Additionally, the Defendant never willingly ended the pursuit to comply with law enforcement. Instead, the pursuit only ended when the Defendant lost control of his vehicle causing the vehicle to crash. The Defendant's conduct shows a blatant disregard for the life of any other motorist as well as his risk of flight.

II. **The Weight of the Evidence Against the Defendant is Strong.**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The Government's case against Defendant is strong. The instant offense was captured fully on body worn camera and the firearm itself was found in the center console of the vehicle of which the Defendant was the driver and sole occupant. The Defendant also admitted knowledge of the firearms when he told officers that he wanted his property placed "in the same spot where

[officers] found the two pistols.[2]" Therefore, the strength of the evidence against Defendant weighs in favor of detention.

### III. The Defendant's History and Characteristics Merit Detention.

The Defendant was previously convicted in Superior Court for Carrying a Pistol Without a License, and he was sentenced to one year in jail, one year suspended, followed by one year of probation. According to the affidavit in support of arrest warrant filed in that matter, the Defendant possessed a loaded, black semi-automatic handgun in his vehicle. (2016-CF2-001409). The Defendant gave police officers consent to search his vehicle, where the firearm was ultimately located, after the Defendant was shot. The Defendant was approached by an individual who requested he "give that shit up," when the Defendant swatted away the firearm, the firearm discharged, and the Defendant was shot in the leg.

Notably, the firearm in the 2016 case was found in the Defendant's vehicle, the exact location where two firearms were found in the present case. The present case shows not only a pattern in the Defendant's behavior, but an escalation because the Defendant now possesses an additional firearm.

On April 29, 2009, the Defendant was convicted of Assault on a Police Officer in Washington, D.C. (2009-CMD-004904). According to the criminal information and affidavit filed in Superior Court, a traffic stop was initiated on a vehicle in which the Defendant was the rear passenger. A protective pat down was conducted and officers felt what they knew to be marijuana in the Defendant's pocket. The Defendant was ordered to place his hands behind his back but twisted and thrust his shoulder into an officer's chest, pushed the officer, and fled. A foot pursuit

---

[2] While speaking with officers the Defendant also stated, "its hers." It was later determined that one of the firearms, the Taurus G3C, was registered to the same individual the defendant named.

ensued where the Defendant ran across the road and through traffic before ultimately being apprehended.

The Defendant's conduct in that case is particularly troubling, given that the Defendant also attempted to flee law enforcement in the present case. However, the Defendant's flight in this case escalated from a foot pursuit to a vehicle pursuit that put other motorists in grave danger of getting into a high speed collision.

The Defendant also has a history of convictions involving narcotics:

- On February 25, 2011, the Defendant was convicted of Possession Not Marijuana in Prince George's County, Maryland and sentenced to one day of confinement. (3E0033890/CJ110243).

- On August 26, 2010, the Defendant was convicted of Possession of Marijuana and Theft Less Than $1,000 in Prince George's County, Maryland and sentenced to one day of confinement. (1E00399981).

- On January 25, 2008, the Defendant was convicted of Possession of a Controlled Substance in Washington, D.C. and was sentenced to 180 confinement, 180 suspended, and one year of probation. (2007-CMD-026432).

- On May 3, 2024, the Defendant was convicted of Attempted Possession With Intent to Distribute Cocaine in Washington, D.C. The Defendant possessed one clear zip lock bag containing 35 clear zip lock bags of a hard rock like substance and one clear zip lock bag containing multiple sized loose hard rock like substances. (2003-FEL-007770).

While the Government's concedes that the Defendant has no criminal convictions after 2016, the Defendant's attempt to flee law enforcement in the present case and possession of *two* firearms outweigh his rather stale criminal history and merits detention.

**IV.     The Defendant Presents a Danger to Our Community.**

The fourth and final factor, the danger to any person or the community posed by Defendant's release, similarly weighs in favor of detention. Despite knowing he was a convicted felon, Defendant possessed *two* loaded firearms, both with a round chambered. The state of

readiness of that firearm demonstrates that Defendant was ready, willing, and able to commit another crime against members of the community. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *see also United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

As previously discussed, the Defendant's conduct while fleeing from law enforcement put members of the public in grave danger. The pursuit of the Defendant reached speeds of up to 100 miles per hour, all while the Defendant weaved in and out of traffic and drove on the shoulder of the roadway. The Defendant's willingness to flee from law enforcement—causing potential danger to innocent motorists—demonstrates the danger he poses to the community and a risk of flight. Therefore, this factor weighs in favor of detention.

## **CONCLUSION**

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

Respectfully submitted,

JEANINE FERRIS PIRRO

UNITED STATES ATTORNEY

By: */s/ Jessica Bove*
Jessica Bove
Assistant United States Attorney
PA Bar No. 328892
601 D Street NW
Washington, DC 20579
(202) 252-7566
Jessica.bove@usdoj.gov